# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: 9/8/2020 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
      Cook County, IL

FILED
5/11/2020 11:40 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04136

9228621

FILED DATE: 5/11/2020 11:40 AM 2020CH04136

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

BETTY ADAMS, SHAKENA ADAMS, KENNETH ANDERSON,
QUAYUANNA BILLS, JENNIFER BORKOWSKI, BARBARA BREWER,
SYLVIA DEMETROULAKOS, PATRICK DUKES, CHARLES EVANS, and
ALEX MATURANI,

                             (Name all parties)     Case No.   2020CH04136

v.

SANTANDER CONSUMER USA, INC.

☑ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

Summons - Alias Summons                               **(08/01/18) CCG 0001 B**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Atty. No.: 62075

Witness: _____

Atty Name: Schuyler Ufkes

5/11/2020 11:40 AM DOROTHY BROWN

Atty. for: Plaintiffs

_____

Address: 350 North LaSalle Street, 14th Floor

DOROTHY BROWN, Clerk of Court

City: Chicago

Date of S_____

State: IL    Zip: 60654

(To be inserted by officer on copy left with Defendant or other person):

Telephone: (312) 819-2104

Primary Email: sufkes@edelson.com

FILED DATE: 5/11/2020 11:40 AM   2020CH04136

FILED DATE: 5/11/2020 11:40 AM  2020CH04136

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 9/8/2020 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
　　　　　Cook County, IL

FILED
5/8/2020 5:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04136

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BETTY ADAMS, SHAKENA ADAMS, KENNETH ANDERSON, QUAYUANNA BILLS, JENNIFER BORKOWSKI, BARBARA BREWER, SYLVIA DEMETROULAKOS, PATRICK DUKES, CHARLES EVANS, and ALEX MATURANI, | Case No. **2020CH04136** 9224633 |
| *Plaintiffs,* | **JURY TRIAL DEMANDED** |
| v. | |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant.* | |

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Betty Adams, Plaintiff Shakena Adams, Plaintiff Kenneth Anderson, Plaintiff

Quayuanna Bills, Plaintiff Jennifer Borkowski, Plaintiff Barbara Brewer, Plaintiff Sylvia

Demetroulakos, Plaintiff Patrick Dukes, Plaintiff Charles Evans, and Plaintiff Alex Maturani

("Plaintiffs") bring this Complaint and Demand for Jury Trial against Defendant Santander

Consumer USA, Inc. ("Defendant" or "Santander"), to stop Defendant's practice of making

unsolicited telephone calls to Plaintiffs and their family members and charging Plaintiffs

unlawful debt collection fees, and to obtain redress for injuries suffered as a result of its conduct.

Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and

experiences, and, as to all other matters, upon information and belief, including investigation

conducted by their attorneys:

### NATURE OF THE CASE

1.　　　Defendant Santander Consumer USA, Inc. is a debt collector that has made

repeated and unsolicited telephone calls to Plaintiffs' cellular phones in an attempt to collect

1

FILED DATE: 5/8/2020 5:30 PM 2020CH04136

alleged debts in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq.*) (the "TCPA"), and the Fair Debt Collection Practices Act (15 U.S.C. §1692, *et seq.*) (the "FDCPA"), and charged Plaintiffs unauthorized fees, also in violation of the FDCPA.

2.      Specifically, Santander is an industry leader in collecting on subprime auto loans that it owns, as well as those owned by third parties. Approximately 88% of its auto loan portfolio consists of subprime receivables from consumers who do not qualify for conventional consumer finance products as a result of, among other things, a lack of or adverse credit history, low income levels, and/or the inability to provide adequate down payments. Thus, the debtors that Santander targets and attempts to collect from, whether it or a third party owns the debt, are often in unstable circumstances where they are relatively more susceptible to harassment, oppression, and abuse.

3.      Unfortunately, Santander capitalizes on these circumstances by incessantly calling consumers, like Plaintiffs and their loved ones, multiple times a day and routinely charging them unauthorized fees—like late fees and loan payment fees—that were not contemplated by their loan agreements.

4.      The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. Defendant placed thousands of phone calls—using an automatic telephone dialing system or an artificial or prerecorded voice—to Plaintiffs' cellular telephones without obtaining their prior express consent to be called at those numbers, and despite Plaintiffs' repeated requests that Defendant stop calling them on their cell phones.

5.      By making these debt collection calls, Defendant has caused actual harm in that Plaintiffs were subjected to the aggravation and nuisance that necessarily accompanies repeated

2

FILED DATE: 5/8/2020 5:30 PM 2020CH04136

and unsolicited phone calls. In addition, Plaintiffs suffered direct and indirect harm in the form of monies paid for the receipt of such calls from Defendant.

6.      The FDCPA was similarly enacted to protect consumers from abusive debt collection practices just like Plaintiffs were subjected to. Specifically, it prohibits debt collectors like Santander from, among other things, repeatedly calling Plaintiffs with the intent to annoy, abuse, and harass them; calling their family members, friends, and references without Plaintiffs' consent; and collecting "*any* amount" incidental to Plaintiffs' debts unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Defendant routinely and willfully violated each Plaintiff's rights under the FDCPA.

7.      In response to Defendant's unlawful conduct, Plaintiffs now bring the instant lawsuit seeking to recover statutory damages under the TCPA—trebled due to the knowledge and willfulness of Defendant's conduct—and an injunction requiring Defendant to cease all unsolicited phone call activities. Plaintiffs also seek an injunction requiring Defendant to cease imposing unlawful fees on consumers, as well as an award of actual and statutory damages to Plaintiffs as provided under the FDCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8.      Plaintiff Betty Adams is a natural person and citizen of the State of Texas.

9.      Plaintiff Shakena Adams is a natural person and citizen of the State of Nevada.

10.     Plaintiff Kenneth Anderson is a natural person and citizen of the State of Illinois.

11.     Plaintiff Quayuanna Bills is a natural person and citizen of the State of Tennessee.

12.     Plaintiff Jennifer Borkowski is a natural person and citizen of the State of Illinois.

13.     Plaintiff Barbara Brewer is a natural person and citizen of the State of Texas.

14.     Plaintiff Sylvia Demetroulakos is a natural person and citizen of the State of

3

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

Florida.

15.     Plaintiff Patrick Dukes is a natural person and citizen of the State of Texas.

16.     Plaintiff Charles Evans is a natural person and citizen of the State of Georgia.

17.     Plaintiff Alex Maturani is a natural person and citizen of the State of Arizona.

18.     Defendant Santander Consumer USA, Inc. is a corporation incorporated and existing under the laws of the State of Illinois with its principal place of business located at 1601 Elm Street, Suite 800, Dallas, Texas 75201. It does business throughout this County, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

19.     The Court has personal jurisdiction over this action pursuant to 735 ILCS 5/2-209(a)-(b) because Defendant is a corporation organized under the laws of the State of Illinois and conducts business transactions in this State.

20.     Venue is proper under 735 ILCS 5/2-101 and 5/2-102 because Defendant is incorporated under the laws of this State and conducts business in, and therefore resides in, Cook County.

## COMMON FACTUAL ALLEGATIONS

21.     Santander services and attempts to collect on billions of dollars in subprime consumer loans each year. Among other things, Santander creates and sends monthly statements to consumers, collects loan payments, and processes loan payments. In addition to servicing loans that it owns, it regularly services and attempts to collect on loans originated and/or owned by other companies.

22.     Many of Santander's "customers" are involuntary consumers who are only forced to work with Santander because it acquired the rights to collect on their loans without their prior

4

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

knowledge or consent or because their car dealerships independently elected to use Santander to provide subprime financing. These consumers, whose voluntary relationships with car dealerships have locked them into financing relationships with Santander, often find that in order to keep their vehicles, they must deal with Santander for as long as it services their loans, regardless of how they are treated by it or its employees.

23.     As a debt collector, Defendant is in the business of placing thousands of unsolicited, harassing telephone calls to consumers like Plaintiffs, who allegedly owed a debt to Defendant. Defendant made these repeated and harassing calls to Plaintiffs' cellular telephones despite the fact that they never provided Defendant consent to be called on their cellular telephones and repeatedly requested that Defendant stop calling them at those numbers.

24.     In fact, many of the cell phone numbers called were never provided to Defendant or any other entity for any purpose related to a debt. Instead, Defendant acquired those cell phone numbers—as well as the phone numbers of Plaintiffs' family members, friends, and/or personal references—through various means such as "skip tracing" (*i.e.*, locating an individual's phone number by searching through public and private databases) and "number trapping" (*i.e.*, capturing phone numbers from which debtors and others place incoming calls to Defendant to inquire about their debts and adding those to its database of numbers to be called in the future).

25.     The calls each Plaintiff received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiffs state that each alleged call was either

5

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

███████████████████████████████████████████████████████

██████████████████████████████████████████████████, both of

which indicate Defendant's use of an automated telephone dialing system. Moreover, many of

the calls Plaintiffs received used a pre-recorded or robotic-sounding voice, and if Plaintiffs

attempted to respond to or interrupt the artificial voice, no human would respond back.

26.     Additionally, Defendant's calls utilized interactive voice recognition technology,

also known as a predictive dialer, in which calls are placed by a machine, and when a consumer

answers the phone, there is a noticeable pause prior to being connected to a live representative of

Defendant. This technology, on information and belief, dials several numbers simultaneously and

connects the call to only those who answer first.

27.     Plaintiffs never consented to, requested, or otherwise desired or permitted calls

from Defendant for the purpose of debt collection or any other purpose.

28.     Plaintiffs were each absent class members in the former putative class action

*Espejo v. Santander Consumer USA, Inc.*, Case No. 1:11-cv-08987 (N.D. Ill.), which

commenced on December 19, 2011 and asserted TCPA claims against Santander that were

virtually identical to those alleged by Plaintiffs. Plaintiffs' claims under the TCPA were thus

equitably tolled by the *Espejo* matter from December 19, 2011 to October 14, 2016 when class

certification was denied. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).

29.     Plaintiffs' TCPA claims, as well as their FDCPA claims, have been further tolled by

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

6

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

███████████████.

## FACTS SPECIFIC TO BETTY ADAMS AND SHAKENA ADAMS

30.     In or around 2008, Plaintiff Betty Adams purchased a 2005 Chevrolet Cobalt and originally received financing through auto loan company Drive Financial Services

31.     At some point, Defendant took over Plaintiff Betty Adams' auto loan account and began placing calls to her cellular phone, █████-8496, and to her daughter Plaintiff Shakena Adams' cellular phone, █████-2808, attempting to collect on the purported debt.

32.     At no time had Plaintiff Betty Adams or Plaintiff Shakena Adams (together, the "Adams") ever provided Defendant or any other entity involved in the purchase of the vehicle prior express consent to call them at their cellular phone numbers, and shortly after the calls started, the Adams repeatedly asked Defendant to stop calling them at their cellular phone numbers.

33.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Betty Adams' and Plaintiff Shakena Adams' cellular phones. At its peak, Defendant called the Adams' cellular phones approximately seven times a day. Defendant routinely called the Adams' cellular phones multiple times a day.

34.     Many of the calls made to Plaintiff Shakena Adams were placed at unusual and inconvenient times, such as after 9:00 p.m.

35.     The calls Plaintiff Betty Adams and Plaintiff Shakena Adams received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Betty Adams and Plaintiff Shakena Adams indicate that many of the alleged calls were either ███████

7



, both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Betty Adams and Plaintiff Shakena Adams received used a pre-recorded or robotic-sounding voice, as opposed to a live Santander agent being on the line.

36.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

37.     Plaintiff Betty Adams and Plaintiff Shakena Adams never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Betty Adams and Plaintiff Shakena Adams repeatedly insisted that Defendant refrain from calling them on their cellular phones, revoking any purported consent to be called at those phone numbers.

### FACTS SPECIFIC TO KENNETH ANDERSON

38.     In July 2006, Plaintiff Kenneth Anderson purchased a 2004 Trailblazer LS and originally received financing through auto loan company HSBC.

39.     At some point, Defendant took over Plaintiff Anderson's auto loan account and began placing calls to his cellular phone, ███-0610, attempting to collect on his purported debt.

8

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

40.    At no time had Plaintiff Anderson ever provided Defendant or any other entity involved in the purchase of his vehicle prior express consent to call him at his cell phone number, and shortly after the calls started, she repeatedly asked Defendant to stop calling him at his cell phone number.

41.    Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Anderson's cellular phone. At its peak, Defendant called Plaintiff Anderson's cellular phone approximately 10 to 15 times a day. Defendant also placed even more calls to Plaintiff Anderson's residential landline phone. Defendant routinely called Plaintiff Anderson's cellular phone and residential landline phone multiple times a day.

42.    Many of the calls made to Plaintiff Anderson were placed at unusual and inconvenient times, such as after 9:00 p.m.

43.    In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Anderson's family members without consent.

44.    The calls Plaintiff Anderson received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Anderson indicate that many of the alleged calls were either ██████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████, both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Anderson received used a pre-recorded or robotic-

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

sounding voice, as opposed to a live Santander agent being on the line.

45.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

46.     Plaintiff Anderson never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Anderson repeatedly insisted that Defendant refrain from calling him on his cellular phone, revoking any purported consent to be called at that phone number.

### FACTS SPECIFIC TO QUAYUANNA BILLS

47.     On May 20, 2008, Plaintiff Quayuanna Bills purchased a 2004 Cadillac CTS and originally received financing through auto loan company United Auto Acceptance.

48.     At some point, Defendant took over Plaintiff Bills' auto loan account and began placing calls to her cellular phone, ▮▮▮▮-5883, attempting to collect on her purported debt.

49.     At no time had Plaintiff Bills ever provided Defendant or any other entity involved in the purchase of her vehicle prior express consent to call her at her cellular phone number, and shortly after the calls started, she repeatedly asked Defendant to stop calling her at her cellular phone number.

50.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Bills' cellular phone. Defendant routinely called Plaintiff Bills' cellular phone multiple times a day.

51.     Many of the calls made to Plaintiff Bills were placed at unusual and inconvenient

times, such as before 8:00 a.m.

52.     Moreover, Defendant repeatedly called Plaintiff Bills at her place of employment, even after she asked Defendant to stop calling her at work.

53.     In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Bills' family members and friends without consent.

54.     The calls Plaintiff Bills received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Bills indicate that many of the alleged calls were either █████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████ , both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Bills received used a pre-recorded or robotic-sounding voice, as opposed to a live Santander agent being on the line.

55.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

56.     Plaintiff Bills never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Bills

repeatedly insisted that Defendant refrain from calling her on her cellular phone, revoking any purported consent to be called at that phone number.

## FACTS SPECIFIC TO JENNIFER BORKOWSKI

57.     In or around 2008, Plaintiff Jennifer Borkowski purchased a 2007 Suzuki Forenza and received financing from Defendant Santander Consumer USA, Inc.

58.     At some point, Defendant began placing calls to Plaintiff Borkowski's cellular telephone,          -8393, attempting to collect on her purported debt.

59.     At no time had Plaintiff Borkowski ever provided Defendant or any other entity involved in the purchase of her vehicle prior express consent to call her at her cellular phone number, and shortly after the calls started, she repeatedly asked Defendant to stop calling her at her cellular phone number.

60.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Borkowski's cellular phone. At its peak, Defendant called Plaintiff Borkowski's cellular phone approximately four to five times a day. And on some days, Defendant even called her cellular phone every hour. Defendant routinely called Plaintiff Borkowski's cellular phone multiple times a day.

61.     Many of the calls made to Plaintiff Borkowski were placed at unusual and inconvenient times, such as before 8:00 a.m. and after 9:00 p.m.

62.     Moreover, Defendant repeatedly called Plaintiff Borkowski at her place of employment, even after she asked Defendant to stop calling her at work.

63.     In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Borkowski's family members without consent.

64.     The calls Plaintiff Borkowski received were made using equipment—specifically,

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Borkowski indicate that many of the alleged calls were either ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████, both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Borkowski received left a pre-recorded or robotic-sounding voicemail, as opposed to a live Santander agent being on the line.

65.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

66.     Plaintiff Borkowski never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Borkowski repeatedly insisted that Defendant refrain from calling her on her cellular phone, revoking any purported consent to be called at that phone number.

**FACTS SPECIFIC TO BARBARA BREWER**

67.     In 2007, Plaintiff Barbara Brewer purchased a 2005 Dodge Ram 1500 and originally received financing through auto loan company AmeriCredit. Plaintiff Brewer's loan was then taken over by HSBC.

13

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

68.     At some point, Defendant took over Plaintiff Brewer's auto loan account and began placing calls to her cellular phone, ████████-2447, attempting to collect on her purported debt.

69.     At no time had Plaintiff Brewer ever provided Defendant or any other entity involved in the purchase of her vehicle prior express consent to call her at her cellular phone number, and shortly after the calls started, she repeatedly asked Defendant to stop calling her at her cellular phone number.

70.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Brewer's cellular phone. At its peak, Defendant called Plaintiff Brewer's cellular phone approximately six times a day. Defendant routinely called Plaintiff Brewer's cellular phone multiple times a day.

71.     Many of the calls made to Plaintiff Brewer were placed at unusual and inconvenient times, such as after 9:00 p.m.

72.     In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Brewer's family members and personal references without consent.

73.     The calls Plaintiff Brewer received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Brewer indicate that many of the alleged calls were either ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████, both

14

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Brewer received used a pre-recorded or robotic-sounding voice, as opposed to a live Santander agent being on the line.

74.    Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

75.    Plaintiff Brewer never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Brewer repeatedly insisted that Defendant refrain from calling her on her cellular phone, revoking any purported consent to be called at that phone number.

## FACTS SPECIFIC TO SYLVIA DEMETROULAKOS

76.    In November 2010, Plaintiff Sylvia Demetroulakos purchased a 2010 Jeep Wrangler and received financing from Defendant Santander Consumer USA, Inc.

77.    At some point, Defendant began placing calls to Plaintiff Demetroulakos' cellular telephone,        -0841, attempting to collect on her purported debt.

78.    At no time had Plaintiff Demetroulakos ever provided Defendant or any other entity involved in the purchase of her vehicle prior express consent to call her at her cellular phone number, and shortly after the calls started, she repeatedly asked Defendant to stop calling her at her cellular phone number.

79.    Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Demetroulakos' cellular phone. At its peak, Defendant called Plaintiff Demetroulakos'

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

cellular phone approximately three to four times a day. Defendant also placed even more calls to Plaintiff Demetroulakos' residential landline phone. Defendant routinely called Plaintiff Demetroulakos' cellular phone and residential landline phone multiple times a day.

80.     Many of the calls made to Plaintiff Demetroulakos were placed at unusual and inconvenient times, such as after 9:00 p.m.

81.     Moreover, Defendant repeatedly called Plaintiff Demetroulakos at her place of employment, even after she asked Defendant to stop calling her at work.

82.     In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Demetroulakos' family members without consent.

83.     The calls Plaintiff Demetroulakos received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Demetroulakos indicate that many of the alleged calls were either ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████, both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Demetroulakos received used a pre-recorded or robotic-sounding voice, as opposed to a live Santander agent being on the line.

84.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of

16

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

85.     Plaintiff Demetroulakos never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Demetroulakos repeatedly insisted that Defendant refrain from calling her on her cellular phone, revoking any purported consent to be called at that phone number.

### FACTS SPECIFIC TO PATRICK DUKES

86.     In or around 2007, Plaintiff Patrick Dukes purchased a 2002 Chevrolet Suburban 1500 and originally received financing through auto loan company CitiFinancial.

87.     At some point, Defendant took over Plaintiff Dukes' auto loan account and began placing calls to his cellular phone, ▮▮▮▮▮-0254, attempting to collect on his purported debt.

88.     At no time had Plaintiff Dukes ever provided Defendant or any other entity involved in the purchase of his vehicle prior express consent to call him at his cellular phone number, and shortly after the calls started, he repeatedly asked Defendant to stop calling him at his cellular phone number.

89.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Dukes' cellular phone. At its peak, Defendant called Plaintiff Dukes' cellular phone approximately three or four times a day. Defendant routinely called Plaintiff Dukes' cellular phone multiple times a day.

90.     Many of the calls made to Plaintiff Dukes were placed at unusual and inconvenient times, such as before 8:00 a.m. and after 9:00 p.m.

91.     Moreover, Defendant repeatedly called Plaintiff Dukes at his place of employment, even after he asked Defendant to stop calling him at work.

FILED DATE: 5/8/2020 5:30 PM 2020CH04136

92.     In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Dukes' family members and without consent.

93.     The calls Plaintiff Dukes received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Dukes indicate that many of the alleged calls were either ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████, both of which indicate Defendant's use of an automated telephone dialing system. Moreover, many of the calls Plaintiff Dukes received used a pre-recorded or robotic-sounding voice, as opposed to a live Santander agent being on the line.

94.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

95.     Plaintiff Dukes never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Dukes repeatedly insisted that Defendant refrain from calling him on his cellular phone, revoking any purported consent to be called at that phone number.

18

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

## FACTS SPECIFIC TO CHARLES EVANS

96.     On April 8, 2008, Plaintiff Charles Evans purchased a 2006 Chrysler 300 and originally received financing through auto loan company Drive Financial Services.

97.     At some point, Defendant took over Plaintiff Evans' auto loan account and began placing calls to his cellular phone, ███ -802, attempting to collect on his purported debt.

98.     At no time had Plaintiff Evans ever provided Defendant or any other entity involved in the purchase of his vehicle prior express consent to call him at his cellular phone number, and shortly after the calls started, he repeatedly asked Defendant to stop calling him at his cellular phone number.

99.     Defendant, however, was persistent in its efforts, placing hundreds of calls to Plaintiff Evans' cellular phone. At its peak, Defendant called Plaintiff Evans' cellular phone approximately eight to ten times a day. Defendant routinely called Plaintiff Evans' cellular phone multiple times a day.

100.    Many of the calls made to Plaintiff Evans were placed at unusual and inconvenient times, such as before 8:00 a.m.

101.    In its attempts to collect on this purported debt, Defendant even resorted to repeatedly calling several of Plaintiff Evans' family members without consent.

102.    The calls Plaintiff Evans received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Evans indicate that many of the alleged calls were either ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

19

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

████████████████████████████████████████████

████████████████████████████████████████, both

of which indicate Defendant's use of an automated telephone dialing system.

103.     Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

104.     Plaintiff Evans never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Evans repeatedly insisted that Defendant refrain from calling him on his cellular phone, revoking any purported consent to be called at that phone number.

### FACTS SPECIFIC TO ALEX MATURANI

105.     On January 30, 2007 Plaintiff Alex Maturani purchased a 2005 Saturn Red Line and received financing from Defendant Santander Consumer USA, Inc.

106.     At some point, Defendant began placing calls to Plaintiff Maturani's cellular telephone, ████-3993, attempting to collect on his purported debt.

107.     At no time had Plaintiff Maturani ever provided Defendant or any other entity involved in the purchase of his vehicle prior express consent to call him at his cellular phone number, and shortly after the calls started, he repeatedly asked Defendant to stop calling him at his cellular phone number.

108.     Defendant, however, was persistent in its efforts, placing dozens of calls to Plaintiff Maturani's cellular phone. Defendant also placed even more calls to Plaintiff Maturani's

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

residential landline phone. Defendant routinely called Plaintiff Maturani's cellular phone and residential landline phone multiple times a day.

109. Many of the calls made to Plaintiff Maturani were placed at unusual and inconvenient times, such as before 8:00 a.m.

110. Moreover, Defendant repeatedly called Plaintiff Maturani at his place of employment, even after he asked Defendant to stop calling him at work.

111. The calls Plaintiff Maturani received were made using equipment—specifically, Defendant's Aspect dialer system—that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. On information and belief, Santander's call logs with Plaintiff Maturani indicate that many of the alleged calls were either ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████, both of which indicate Defendant's use of an automated telephone dialing system.

112. Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

113. Plaintiff Maturani never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or for any other purpose. Plaintiff Maturani repeatedly insisted that Defendant refrain from calling him on his cellular phone, revoking any

FILED DATE: 5/8/2020 5:30 PM   2020CH04136

purported consent to be called at that phone number

## COUNT I
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)(1)(A)
### (On Behalf of Plaintiffs as Against Defendant)

114.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

115.    Defendant and its agents made thousands of unsolicited phone calls to cellular telephone numbers, subscribed to and primarily used by Plaintiffs, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

116.    Defendant utilized a predictive dialer—specifically, its Aspect dialer system—to place numerous phone calls to Plaintiffs and other individuals simultaneously and without human intervention. Defendant's predictive dialer qualifies as an automatic telephone dialing system because it is equipment, combining software and hardware aspects, that has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

117.    Many of the phone calls Defendant placed to Plaintiffs' cellular telephones featured artificial or prerecorded voices.

118.    The phone calls were made to Plaintiffs' wireless telephones without the consent of Plaintiffs to receive phone calls on their cellular telephones, and in many instances, without those numbers being provided to Defendant or any other entity in connection with the debt they purportedly owed.

119.    Once Defendant began placing calls to Plaintiffs' cellular telephones, Plaintiffs repeatedly asked Defendant to stop calling them on their cellular telephones, revoking any

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

purported consent (to the extent it ever existed) to be called at those phone numbers.

120.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's illegal conduct, Plaintiffs suffered actual damages in the form of monies paid to receive unsolicited calls on their cellular phones and, under section 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each violation of such Act.

121.    Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs.

**COUNT II**
**Violation of the Fair Debt Collection Practices Act**
**15 U.S.C. §1692, *et seq.***
**(On Behalf of Plaintiffs as Against Defendant)**

122.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

123.    Plaintiffs are natural persons that were obligated or allegedly obligated to debts incurred for personal, family, and/or household purposes. As such, Plaintiffs are "consumer[s]" within the meaning of 15 U.S.C. § 1692a(3).

124.    Santander regularly acts as a third-party collection agent for debts owed to others, as a significant portion of its business is dedicated to third-party debt servicing wherein Santander services and attempts to collect on debts owed to and owned by other companies. Moreover, the principal purpose of Santander's business is the collection of debts. As such, Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

125.    Defendant used a predictive dialer and other instrumentalities of interstate commerce to employ harassing and abusive means to collect or attempt to collect debts from Plaintiffs. Among other things, Defendant used a predictive dialer to repeatedly and continuously

23

FILED DATE: 5/8/2020 5:30 PM 2020CH04136

cause Plaintiffs' telephones to ring (often numerous times a day) and engage Plaintiffs in telephone conversations with the intent to annoy, abuse, and harass Plaintiffs.

126.    By placing thousands of unsolicited phone calls to Plaintiffs, Defendant violated the FDCPA, 15 U.S.C. §1692d(5), as to all Plaintiffs.

127.    Several of the calls placed to Plaintiff Shakena Adams, Plaintiff Anderson, Plaintiff Bills, Plaintiff Borkowski, Plaintiff Brewer, Plaintiff Demetroulakos, Plaintiff Dukes, Plaintiff Evans, and Plaintiff Maturani were made at unusual and inconvenient times, such as before 8:00 a.m. or after 9:00 p.m., without their prior consent to be contacted at such times, in violation of the FDCPA, 15 U.S.C. §1692c(a)(1).

128.    Further, Defendant repeatedly contacted Plaintiff Bills, Plaintiff Borkowski, Plaintiff Demetroulakos, Plaintiff Dukes, and Plaintiff Maturani at their places of employment, even after they asked Defendant not to call them at work. Defendant, thus, had reason to know they could not receive such communications at work, but continued to call them anyways, in violation of the FDCPA, 15 U.S.C. §1692c(a)(3).

129.    Defendant also violated the FDCPA, 15 U.S.C. §1692c(b), as to Plaintiff Betty Adams, Plaintiff Anderson, Plaintiff Bills, Plaintiff Borkowski, Plaintiff Brewer, Plaintiff Demetroulakos, Plaintiff Dukes, and Plaintiff Evans, by communicating with third parties, such as Plaintiffs' family members, friends, and personal references, in connection with Plaintiffs' alleged debts, without Plaintiffs' prior consent to call such third-party persons, and for purposes other than acquiring location information about Plaintiffs.

130.    Defendant also violated the FDCPA, 15 U.S.C. §1692f(1), as to Plaintiff Betty Adams, Plaintiff Shakena Adams, Plaintiff Anderson, Plaintiff Bills, Plaintiff Borkowski, Plaintiff Demetroulakos, and Plaintiff Dukes, by collecting money from Plaintiffs—including interest, late

FILED DATE: 5/8/2020 5:30 PM 2020CH04136

fees, convenience fees, processing fees, online or over-the-phone payment fees, and other miscellaneous fees, charges, and/or expenses—not expressly authorized by contract or permitted by law.

131. Defendant's noncompliance with the FDCPA described herein—including but not limited to its unsolicited telephone calls, use of obscene, profane, and abusive language, and unlawful collection of monies from Plaintiffs—was frequent, persistent, and intentional.

132. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs suffered actual damages in the form of, *inter alia*, monies paid to receive unsolicited telephone calls and monies paid for interest, late fees, convenience fees, processing fees, online or over-the-phone payment fees, and/or other expenses unlawfully charged by Defendant.

133. Accordingly, pursuant to 15 U.S.C. § 1692k, Plaintiffs are each entitled to, *inter alia*, actual damages, costs, and attorneys' fees and expenses, as well as additional statutory damages of up to $1,000 each.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and for the following relief:

A.    Declare that Defendant's conduct as described herein violates the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq.*), and the Fair Debt Collection Practices Act (15 U.S.C. §1692, *et seq.*);

B.    Award actual and statutory damages;

C.    Award injunctive relief requiring Defendant to permanently cease all unsolicited phone call activities;

D.    Award reasonable litigation expenses and attorneys' fees; and

FILED DATE: 5/8/2020 5:30 PM    2020CH04136

E.    Award such further and other relief the Court deems reasonable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiffs request trial by jury of all claims that can be so tried.

Respectfully submitted,

**BETTY ADAMS, SHAKENA ADAMS, KENNETH ANDERSON, QUAYUANNA BILLS, JENNIFER BORKOWSKI, BARBARA BREWER, SYLVIA DEMETROULAKOS, PATRICK DUKES, CHARLES EVANS,** and **ALEX MATURANI,**

Dated: May 8, 2020

By: /s/ Schuyler R. Ufkes
    One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
Firm No.: 62075

26